David Albert Pierce, Esq. SBN 162396
Azita Mirzaian, Esq.  SBN 280749
Vera Golosker, Esq.  SBN 290537
**PIERCE LAW GROUP LLP**
9100 Wilshire Boulevard, Suite 225 East
Beverly Hills, California  90212-3415
Telephone (310) 274-9191
Facsimile (310) 274-9151
David@PierceLawGroupLLP.com
Azita@PierceLawGroupLLP.com
Vera@PierceLawGroupLLP.com

*Attorneys for Plaintiff*
OURHOUSE MOBILE APP, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OURHOUSE MOBILE APP, INC., a California corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>PI BETA PHI FRATERNITY a.k.a. PI BETA PHI, an Illinois corporation; JULI WILLEMAN, an individual; EILY CUMMINGS, an individual; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.  2:15-CV-4596<br><br>**COMPLAINT FOR:**<br><br>1. **Fraud**<br>2. **Copyright Infringement**<br>3. **Trademark Infringement**<br>4. **Breach of Oral Contract**<br>5. **Breach of Implied Contract**<br>6. **Intentional Interference with Contractual Relations**<br>7. **Intentional Interference with Prospective Economic Advantage**<br>8. **Theft of Trade Secrets**<br>9. **Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.**<br><br>**DEMAND FOR TRIAL BY JURY** |

*(Left margin, vertical text):* **PIERCE LAW GROUP LLP** 9100 Wilshire Boulevard Suite 225 East Tower Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

1      Plaintiff OurHouse Mobile App, Inc., a California corporation
2 ("OurHouse"), by and through its undersigned council, hereby complains
3 against defendants Pi Beta Phi Fraternity a.k.a. Pi Beta Phi, Juli Willeman,
4 Eily Cummings, and Does 1 through 10 (collectively referred to as
5 "Defendants"), and seeks relief pursuant to the following claims alleged
6 herein as follows:

7 **NATURE OF THE ACTION**

8     1.    This action arises out of Defendants' unfair and unethical
9 business dealings with Plaintiff (a small start-up), which resulted in fraud,
10 breaches of contracts, and violations of intellectual property law.

11 **JURISDICTION & VENUE**

12     2.    This Court has subject matter jurisdiction over OurHouse's
13 claims pursuant to 15 U.S.C. § 1121(a) (trademark), 28 U.S.C. § 1338
14 (copyright and trademark), and 17 U.S.C. § 501 (copyright). This Court also
15 has jurisdiction over this action pursuant to pursuant to 28 U.S.C. § 1332
16 (diversity jurisdiction), in that this is a civil action between citizens of
17 different states in which the matter in controversy exceeds the jurisdictional
18 minimum of this Court. Further, this Court has supplemental jurisdiction over
19 all additional non-federal claims, pursuant to 28 U.S.C. § 1367.

20     3.    The Court has personal jurisdiction over Defendants because
21 Defendants conduct substantial business in Southern California, namely in
22 Los Angeles.

23     4.    Venue is proper in the Central District of California pursuant to
24 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the
25 Complaint occurred in this District.

26 ///

27 ///

28

2
COMPLAINT

## THE PARTIES

5.     OurHouse is a California corporation with its principal place of business in Los Angeles, California. OurHouse's predecessors in interest are Windameer, LLC (a Texas limited liability company) and Windameer, Inc. (a Texas corporation).

6.     OurHouse is informed and believes and, on the basis of such information and belief, alleges that defendant Pi Beta Phi Fraternity is an Illinois corporation with its principal place of business in Town Country, Missouri, and that it does business throughout the United States, including in Los Angeles, California.

7.     OurHouse is informed and believes and, on the basis of such information and belief, alleges that defendant Juli Willeman ("Willeman"), an individual, is and at all relevant times was a resident of St. Louis, Missouri and the Executive Director and Principal Officer of defendant Pi Beta Phi Fraternity.  On information and belief, defendant Willeman conducts business in Los Angeles, California.

8.     OurHouse is informed and believes and, on the basis of such information and belief, alleges that defendant Eily Cummings ("Cummings"), an individual, is and at all relevant times was a resident of St. Louis, Missouri, and the Marketing and Communications Director of defendant Pi Beta Phi Fraternity.   On information and belief, defendant Cummings conducts business in Los Angeles, California.

9.     The true names and capacities of DOES 1 through 10, inclusive, whether individual corporate, associate or otherwise, are unknown to OurHouse at this time, and OurHouse therefore sues said defendants by such fictitious names, and when the true names, capacities, and relationships of such defendants are ascertained, OurHouse will ask leave of Court to amend this Complaint to insert the same.

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

10.   OurHouse is informed and believes and, on the basis of such information and belief, alleges that each defendant named in this Complaint was, at all times herein mentioned, and now is, the agent and employee of each other defendant herein, and was at all times acting within the course and scope of said agency and employment.   When referring to "Defendants" herein, OurHouse intends to include defendants Pi Beta Phi Fraternity, Willeman, Cummings, and DOE defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

**OurHouse Created the OurHouse Mobile Application**

11.   In 2013, OurHouse created the first ever multi-platform fraternity and sorority chapter management system and mobile application (the "OurHouse App").

12.   The OurHouse App provides fraternity and sorority chapter members and their respective executive council members with a unique, password protected tool to stay organized and informed about every aspect of their chapter's Greek life.

13.   Specifically, the OurHouse App is the first system to use and/or aggregate all of the following features in one secure, easy-to-use mobile application: (1) an event calendar for fraternity and sorority chapter members to stay up to date with their chapter's upcoming events, which includes an attendance-taking function for chapter members to voluntarily sign up for social events and submit an excuse for not participating in mandatory events; (2) a "wall" for chapter members to post messages and start discussions; (3) a weekly meal menu for chapter leadership to inform members about the meals being served at the chapter house for the current week; (4) a "late plate request" function for chapter members to request that a meal be saved for

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

4

COMPLAINT

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

them if they are unable to attend a particular meal during the chapter's set meal hours; (5) a click-to-call member list for chapter members to easily and quickly contact one another; (6) a form creation function for chapter leadership to create surveys and other types of forms; and (7) a "local deals" section where chapter members can gain access to exclusive deals offered by local businesses (collectively, the "OurHouse App Features").

14.   Although there exists web-based software that offers fraternity and sorority chapter members the ability to, among other things, pay their chapter dues digitally, or communicate with each other digitally, no other existing web-based or mobile software has created and/or provided the OurHouse App Features on one multi-platform, chapter management system.

15.   OurHouse has acquired various intellectual property rights during its existence, including:

a. United States trademark serial number 86,586,170 for the mark "LATE PLATE" in International Class 042 (providing temporary use of online non-downloadable software), which OurHouse applied for on April 2, 2015 (the "Late Plate Trademark"). A true and correct copy of the USPTO's email confirmation of receipt of the Late Plate Trademark application is attached hereto as Exhibit "A" and incorporated herein by this reference.

b. United States copyright case number 1-1951443511 for the workflow of the OurHouse App entitled "OurHouse Mobile Application Workflow V.1.0," which was applied for on December 4, 2014 (the "OurHouse Copyright"). A true and correct copy of the U.S. Copyright Office's email confirmation of receipt of the OurHouse Copyright

application is attached hereto as Exhibit "B" and incorporated herein by this reference.

16.     On or about September 7, 2013, OurHouse published Version 1 of the OurHouse App ("V.1"), which included all of the above-identified features except for the "late plate request" function, the attendance-taking function, and the click-to-call member list feature.

17.     OurHouse has since launched V.2, which includes all of the OurHouse App Features and, to date, has approximately 1,250 users in 18 chapters across 7 states and in Canada.

**OurHouse Submitted the OurHouse App to Defendants as Part of a Business Proposal**

18.     Almost immediately after OurHouse published V.1, on or about September 9, 2013, defendant Pi Beta Phi Fraternity's University of California Los Angeles chapter ("Pi Beta Phi UCLA") entered into an agreement with OurHouse to use V.1 of the OurHouse App and began using the OurHouse App.

19.     On January 30, 2014, OurHouse contacted defendant Eily Cummings (Marketing and Communications Director of defendant Pi Beta Phi Fraternity) in the hopes of introducing the OurHouse App and potentially becoming an approved vendor of defendant Pi Beta Phi Fraternity so that the OurHouse App could be used by Pi Beta Phi Fraternity's approximately 137 affiliated chapters.

20.     During a January 30, 2014 conference call, OurHouse introduced defendant Cummings to this new type of chapter management system. Defendant Cummings was interested in the OurHouse App and requested that OurHouse submit a formal proposal, including further details on the

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

functionality of the OurHouse App, for approved vendor consideration by Defendants.

21.     OurHouse is informed and believes and, on the basis of such information and belief, alleges that Defendants quickly thereafter contacted Pi Beta Phi UCLA to determine if its members enjoyed using the OurHouse App, and the reviews from members of Pi Beta Phi UCLA were so positive that Defendants made their subsequent discussions with OurHouse regarding approved vendor consideration a priority.

22.     On February 4, 2014, as requested by defendants, OurHouse submitted a formal proposal to defendant Pi Beta Phi Fraternity via an email to defendant Cummings, which included the technical specifications (i.e. "wireframes") of Version 2 of the OurHouse App ("V.2"). True and correct copies of the February 4, 2014 email and vendor proposal are attached hereto as Exhibit "C" and are incorporated herein by this reference.

23.     Defendant Cummings responded via email to OurHouse on February 5, 2014, acknowledging receipt of OurHouse's formal proposal for approved vendor consideration.

24.     In the approximately four months following defendant Cummings' February 5, 2014 email acknowledgement, OurHouse and Defendants engaged in several telephone calls and numerous email correspondences as part of the vendor approval process:

    a. On March 3, 2014, defendant Cummings and OurHouse conducted a conference call, wherein defendant Cummings informed OurHouse that Defendants "really liked" the event calendar, the attendance-taking function, and the weekly meal menu found in V.1. OurHouse also described for defendant Cummings the "late plate request" function, the attendance-taking function, and the click-to-call member list features that

7

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

were included in V.2.   Defendant Cummings informed OurHouse that if OurHouse became an authorized vendor, defendant Pi Beta Phi Fraternity would pay for the system.

b. On March 4, 2014, defendant Cummings emailed OurHouse requesting further information about the functionality of the OurHouse App.

c. On March 12, 2014, defendant Cummings and OurHouse conducted a conference call, wherein defendant Cummings acknowledged that the OurHouse App was the first of its kind and that Defendants believed they could "get a lot of use out of" the system.   Defendant Cummings and OurHouse discussed a potential pricing structure for when OurHouse became an authorized vendor.   OurHouse conveyed its implementation strategy to defendant Cummings, pursuant to which OurHouse would implement the OurHouse App at fifteen different Pi Beta Phi Fraternity chapters of various sizes across several states.   During this call, defendant Cummings also candidly admitted that, in the past, Defendants had avoided the costs of paying a web developer to design all of defendant Pi Beta Phi Fraternity's chapters' websites by designing all of the websites "in-house."

d. On March 28, 2014, defendant Cummings emailed OurHouse to inform OurHouse that Defendants were still having "discussions" about whether OurHouse would become an approved vendor and administer the OurHouse App to defendant Pi Beta Phi Fraternity's affiliated chapters.

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

e. On April 9, 2014, OurHouse submitted to Defendants additional images of the V.2 user-interface, in order to support OurHouse's efforts to become an approved vendor.

f. On April 9, 2014, defendant Cummings and OurHouse conducted a conference call, wherein OurHouse discussed its monetization strategies with defendant Cummings in order to alleviate any potential pricing concerns that Defendants may have had in their consideration of OurHouse. Defendant Cummings informed OurHouse that Defendants would conduct a survey of over 1,000 of the executive council members of defendant Pi Beta Phi Fraternity's chapters to determine if such members approved of the idea of using the OurHouse App (the "Survey"). Defendant Cummings also expressed concerns about how the OurHouse App would synch with defendant Pi Beta Phi Fraternity's database and "fit in" to its "IT map."

g. On April 22, 2014, defendant Cummings emailed OurHouse a copy of defendant Pi Beta Phi Fraternity's IT map, in order to assist OurHouse in determining if it was possible for the OurHouse App to synch with defendant Pi Beta Phi Fraternity's database and ultimately fit in to its IT map.

h. On April 23, 2014, OurHouse submitted additional images of the V.2 user-interface to Defendants in order to further help in Defendants' evaluation of OurHouse as an approved vendor. True and correct copies of the April 23, 2014 email and images of the V.2 user-interface are attached hereto as Exhibit "D" and are incorporated herein by this reference.

i.  On April 23, 2014, defendant Cummings and OurHouse conducted a conference call wherein defendant Cummings reiterated Defendants' concerns about how the OurHouse App would fit in to its IT map. Defendant Cummings also informed OurHouse that the results of the Survey were "very positive," and that a "majority" of the 1,000 executive council members wanted the OurHouse App.

j.  On April 25, 2014, OurHouse emailed defendant Cummings to inform Defendants that OurHouse had contacted the administrator of Pi Beta Phi Fraternity's database and confirmed that integrating the OurHouse App with the database would not be a problem. In fact, OurHouse was so confident that Defendants were in good faith considering OurHouse for approved vendor status that OurHouse conducted this call with the co-owner of the company administering Pi Beta Phi Fraternity's database, and discussed important topics, such as where the OurHouse App would fit in to the IT Map, what other approved vendors had done previously to fit in to the IT Map, and how much it would cost OurHouse to do it.

25.    On April 29, 2014, defendant Cummings and OurHouse conducted their final conference call. During this call, defendant Cummings stated that Defendants had determined that defendant Pi Beta Phi Fraternity was "not ready" to implement the OurHouse App in its chapters. Defendant Cummings explained that defendant Pi Beta Phi Fraternity was a "very conservative organization" that was "scared of working with a new company." In another moment of candid admission, defendant Cummings mentioned to

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

OurHouse that she believed Defendants had "a free solution that work[ed] well enough."

**In a September 17, 2014 Email, Defendants Announced the Launch of their Own Competing, Infringing App**

26.     Undeterred by the apparent loss of Defendants' business, OurHouse continued to engage new fraternity and sorority chapters and work with its existing clientele, including Pi Beta Phi UCLA who paid OurHouse $50.00 per month to use the OurHouse App.

27.     On September 17, 2014, approximately five months after OurHouse's last conference call with defendant Cummings, the president of Pi Beta Phi UCLA forwarded an email correspondence to OurHouse that was originally sent to (and intended only for) defendant Pi Beta Phi Fraternity's approximately 137 affiliated chapters.   The email announced Defendants' upcoming launch of a "Chapter Management/Communication App" referred to as "My Pi Phi," which the email indicated would "allow chapters to better manage chapter operations (excluding finances) and simplify the communications process for chapter leadership…" (hereinafter, the "Infringing Application").   A true and correct copy of the September 17, 2014 email is attached hereto as Exhibit "E", and is incorporated herein by this reference.

28.     In the September 17, 2014 email, Defendants make no mention of the OurHouse App and all of the information, plans, and technical specifications that OurHouse had formally submitted to Defendants for the limited purpose of "pitching" the OurHouse App to Defendants for a proposed business relationship with OurHouse.   Defendants do, however, take full credit for creating the Infringing Application by stating that they "began

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

researching…in early spring" and decided to launch "[a]fter overwhelming support" by executive council members.

29.   In the September 17, 2014 email, Defendants describe the functionality of the Infringing Application as including: (1) an event calendar with sign-up and excuse submission features; (2) a "communication wall"; (3) a "late plate request" feature; and (4) a form-creation feature for executive council members to create surveys and other types of forms.

30.   In the September 17, 2014 email, Defendants also explain "their" implementation strategy, stating that the Infringing Application will be tested in seventeen "pilot chapters" of varying sizes across several states.

31.   Defendants state in the September 17, 2014 email: "We understand there are a few mobile device companies and other providers offering chapter apps, many of which are located in the Southeast.   We encourage you to hold off on developing an app with any of these companies…"

32.   The members of OurHouse were shocked by this September 27, 2014 email.

33.   Undeterred, OurHouse continued to engage new fraternity and sorority chapters, including Pi Beta Phi Fraternity's San Diego State University chapter ("Pi Beta Phi SDSU"), which would have paid OurHouse $100.00 per month to use the OurHouse App.

34.   On or about March 31, 2014, the president of Pi Beta Phi SDSU asked OurHouse for "default profile" information so that she could look more closely at the OurHouse App, and OurHouse provided this requested information.   OurHouse is informed and believes and, on the basis of such information and belief, herein alleges that the president of Pi Beta Phi SDSU requested such "default profile" information because a "national advisor" for Defendants directed her to do so.

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

35.     The next day, the president of Pi Beta Phi SDSU informed OurHouse that Pi Beta Phi SDSU would not be able to use the OurHouse App because she had met with a "national advisor" for Defendants, and the "national advisor" had presented her with the Infringing Application, which she said looked "pretty much exactly like" the OurHouse App.

## OurHouse Subsequently Attempted to Resolve This Dispute with Defendants

36.     OurHouse promptly contacted defendant Cummings via email to request a time during which OurHouse could speak with both her and defendant Willeman (Executive Director and Principal Officer of defendant Pi Beta Phi Fraternity).

37.     On April 8, 2015, OurHouse and defendants Cummings and Willeman conducted a conference call, wherein defendants Cummings and Willeman admitted that OurHouse came to Defendants in early spring 2014 seeking to become an approved software vendor of defendant Pi Beta Phi Fraternity.

38.     During this April 8, 2015 call, Defendants Cummings and Willeman also admitted that Defendants internally decided to build the Infringing Application after being presented with the OurHouse App. However, defendants Cummings and Willeman denied any wrongdoing, and refused OurHouse's formal demand that Defendants (1) cease any further development and production of the Infringing Application, (2) return to OurHouse all information and technical specifications related to the OurHouse App that were provided to Defendants, and (3) agree to in good faith discuss implementation of the OurHouse App (instead of the Infringing Application) in its approximately 137 affiliated chapters.

39.    As such, OurHouse had no choice but to commence this litigation against Defendants.

# FIRST CAUSE OF ACTION

## Fraud

### (Brought By Plaintiff Against All Defendants)

40.    OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

41.    Beginning on or about January 30, 2014, Defendants intentionally misrepresented to OurHouse that Defendants would accept a formal proposal regarding the OurHouse App for the limited purpose of considering OurHouse to become an approved vendor of the OurHouse App. Continuing from February 1, 2014 to on or about April 29, 2014, Defendants also intentionally misrepresented to OurHouse, in conference calls and email correspondences over a three month timespan, that Defendants were still considering OurHouse to become an approved vendor of the OurHouse App and therefore needed further information about the OurHouse App, its functionality, what features chapter members liked better than others, and how to properly implement and roll out the same on a national scale.

42.    Defendants' representations to OurHouse were false, as evidenced by the fact that Defendants proceeded to misappropriate all of the sensitive information regarding the OurHouse App and construct the nearly-identical competing Infringing Application to be used by all 137 of defendant Pi Beta Phi Fraternity's affiliated chapters in lieu of the OurHouse App.

43.    Defendants knew that their representations were false, or made the representations recklessly and without regard for their truth, as evidenced, in part, by defendant Cummings' candid admission to OurHouse on March 12,

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

2014 that Defendants had in the past avoided the costs of paying a web developer to design all of its chapters websites by designing all of them "in-house"; by defendant Cummings' further candid admission to OurHouse on April 29, 2014 that she believed Defendants had "a free solution that work[ed] well enough"; and by Defendants' ultimate misappropriation of sensitive information to construct the nearly-identical competing Infringing Application to be used by all 137 of defendant Pi Beta Phi Fraternity's affiliated chapters in lieu of the OurHouse App.

44.   Defendants intended for OurHouse to rely on their misrepresentations, and OurHouse did reasonably rely on such misrepresentations by submitting its formal proposal to Defendants on April 4, 2014, and continuing to provide further sensitive information regarding the OurHouse App, including information regarding whether the OurHouse App would fit into defendant Pi Beta Phi Fraternity's IT map, what the implementation strategy of the OurHouse App would be, and even what the pricing structure would be for Defendants' future use of the OurHouse App.

45.   As a direct and proximate result of Defendants' misrepresentations, OurHouse has been harmed, and OurHouse's reliance on Defendants' representations was a substantial factor in causing this harm.

## SECOND CAUSE OF ACTION

### Copyright Infringement

### (Brought By Plaintiff Against All Defendants)

46.   OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

47.   In or about September 2014, the subject of the OurHouse Copyright was created for OurHouse as a work-made-for-hire pursuant to, and

15

in conformity with, 17 U.S.C. § 101, and was fixed in a tangible medium of expression in the form of a technical drawing, blueprint, and/or diagram.

48.     The subject of the OurHouse Copyright is a sufficiently original work, created with a substantial amount of independent skill, labor and judgment, and is copyrightable subject matter under the laws of the United States.

49.     OurHouse has complied in all respects with the Copyright Act, and all other laws governing copyright, by properly applying for copyright registration on December 4, 2014, and depositing a fixed version of the work with the United States Copyright Office.  The Copyright Office has accepted the application and deposit, and issued case number 1-1951443511 to OurHouse.  A true and correct copy of a fixed version of the OurHouse Copyright, as it was deposited with the United States Copyright Office is attached hereto as Exhibit "F" and incorporated herein by this reference.

50.     Defendants are, and at all times herein mentioned were, knowingly and willfully infringing OurHouse's rights in the OurHouse Copyright by copying the workflow of the OurHouse App, incorporating said workflow and the specific implementation of certain functionalities in Defendants' Infringing Application, and reproducing, publishing, and distributing the Infringing Application throughout the United States without OurHouse's consent and in complete disregard of OurHouse's exclusive rights (17 U.S.C. §§ 106, 501).

51.     As a direct and proximate result of Defendants' infringing behavior, OurHouse has been damaged.

52.     OurHouse is without adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in any further such acts in violation of the Copyright Act (17 U.S.C. § 502).

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

53.     OurHouse is further entitled to recover from Defendants the damages OurHouse has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged herein (17 U.S.C. § 504).

54.     In addition, OurHouse is entitled to other remedies including reasonable attorneys' fees, costs, and prejudgment interest (17 U.S.C. § 505).

## THIRD CAUSE OF ACTION

### Trademark Infringement

### (Brought By Plaintiff Against All Defendants)

55.     OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

56.     OurHouse has continuously used the Late Plate Trademark in interstate commerce on and in connection with the OurHouse App from in or about September 2014, to present.

57.     Defendants' use of the term "Late Plate" on or in connection with its Infringing Application, which OurHouse is informed and believes and, on the basis of such information and belief, alleges Defendants have or have caused to manufacture, market, and/or distribute from approximately September 2014 to the present, is substantially and confusingly similar to the Late Plate Trademark.

58.     Defendants' manufacturing, marketing, and/or distribution of the Infringing Application utilizing the term "Late Plate" has caused, and will continue to cause, fraternity and sorority chapter members and their respective executive council members to be confused as to the source of the Infringing Application, and specifically its "late plate request" feature.

59.   Despite OurHouse's request that Defendants cease any and all manufacturing, marketing, and/or distribution of the Infringing Application bearing the term "Late Plate" in order to prevent consumer confusion, Defendants have continued to manufacture, market, and/or distribute the Infringing Application.

60.   By virtue of Defendants' manufacturing, marketing, and/or distribution of the Infringing Application bearing the term "Late Plate," there is a likelihood of confusion between Defendants' use of the term in its Infringing Application and OurHouse's use of the Late Plate Trademark on and in connection with the OurHouse App.   As such, Defendants' conduct constitutes an infringement of the Late Plate Trademark (15 U.S.C. § 1114).

61.   As a direct and proximate result of Defendants' conduct, OurHouse has been damaged.

62.   OurHouse is without adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in any further such acts in violation of its Late Plate Trademark (15 U.S.C. §§ 1114, 1116).

63.   OurHouse is further entitled to recover from Defendants the damages OurHouse has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged herein (15 U.S.C. §§ 1117).

64.   In addition, OurHouse is entitled to other remedies including reasonable attorneys' fees, costs, and prejudgment interest (15 U.S.C. §§ 1117).

///

///

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

## FOURTH CAUSE OF ACTION

### Breach of Oral Contract

### (Brought By Plaintiff Against All Defendants)

65.     OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

66.     Beginning on or about January 30, 2014, OurHouse and Defendants entered into an oral agreement, whereby OurHouse submitted to Defendants a formal proposal regarding the OurHouse App and corresponding sensitive information, in exchange for Defendants' agreement to review the proposal and information for the limited purpose of considering OurHouse as an approved vendor of the OurHouse App.

67.     OurHouse performed all terms and conditions required on its part to be performed under this agreement.

68.     Defendants materially breached this agreement by taking all of the sensitive information provided to defendants for the limited purpose of considering OurHouse to be an approved vendor, and using it to construct the nearly-identical Infringing Application.   Defendants further breached the agreement by refusing to return to OurHouse all of the information concerning the OurHouse App when requested to do so by OurHouse.

69.     OurHouse has lost business opportunities with each of Defendants' approximately 137 affiliated chapters that are now being instructed to use the Infringing Application instead of the OurHouse App.

70.     As a direct and proximate result of defendants' breach, OurHouse has suffered monetary damages in an amount to be proven at trial.

///

///

PIERCE LAW GROUP LLP

9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

### FIFTH CAUSE OF ACTION

#### Breach of Implied Contract

#### (Brought By Plaintiff Against All Defendants)

71.     OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

72.     Beginning on or about January 30, 2014, in Los Angeles, California, OurHouse submitted to Defendants the OurHouse App and corresponding sensitive information, plans, and technical specifications for the limited purpose of "pitching" the OurHouse App idea to Defendants for a proposed business relationship with OurHouse.

73.     OurHouse conveyed the OurHouse App idea to Defendants with the understanding and expectation, fully and clearly understood by Defendants, that OurHouse would be reasonably compensated for its use by Defendants.

74.     The circumstances preceding and attending the disclosure of the OurHouse App idea and corresponding materials, together with Defendants' conduct and knowledge of the circumstances, indicated the existence of an implied agreement to compensate OurHouse for use of the idea.

75.     Defendants voluntarily accepted the disclosure of the OurHouse App idea, found it valuable, and used it to construct the nearly-identical Infringing Application.

76.     OurHouse performed all terms and conditions required on its part to be performed under the agreement.

77.     Defendants breached said agreement by utilizing OurHouse's ideas without compensation or credit to OurHouse.

COMPLAINT

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

78.   OurHouse has lost business opportunities with each of Defendants' approximately 137 affiliated chapters that are now being instructed to use the Infringing Application instead of the OurHouse App.

79.   As a direct and proximate result of defendants' breach, OurHouse has suffered monetary damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations
### (Brought By Plaintiff Against All Defendants)

80.   OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

81.   At all relevant times herein, OurHouse had a validly enforceable contract with Pi Beta Phi UCLA, under which OurHouse provided Pi Beta Phi UCLA with the OurHouse App, and Pi Beta Phi UCLA agreed to, and did for a period of time, pay to OurHouse a fee of $50.00 per month.

82.   Defendants were aware of OurHouse's contractual relationship with Pi Beta Phi UCLA, as OurHouse is informed and believes and, on the basis of such information and belief, alleges that, after OurHouse initially contacted defendant Cummings on or about January 30, 2014, Defendants contacted Pi Beta Phi UCLA to determine how much its members enjoyed using the OurHouse App.

83.   Defendants intended to, and did, disrupt the full and complete performance of OurHouse's contractual relationship with Pi Beta Phi UCLA by asking OurHouse to submit a formal proposal containing sensitive information about the OurHouse App for the limited purpose of considering OurHouse to be an approved vendor, and thereafter misappropriating such information to construct the nearly-identical competing Infringing Application

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

1  to be used by all of Pi Beta Phi Fraternity's 137 affiliated chapters (including
2  Pi Beta Phi UCLA) instead of the OurHouse App.

3      84.    As a direct and proximate result of Defendants' conduct,
4  OurHouse has suffered monetary damages in an amount to be proven at trial.

6  ### SEVENTH CAUSE OF ACTION
7  ### Intentional Interference with Prospective Economic Advantage
8  ### (Brought By Plaintiff Against All Defendants)

9      85.    OurHouse repeats, re-alleges, and incorporates herein by this
10  reference each and every allegation contained in paragraphs 1 through 39, as
11  though set forth in full herein.

12      86.    At all relevant times herein, OurHouse was engaged in economic
13  relationships with Pi Beta Phi UCLA, Pi Beta Phi SDSU, and other Pi Beta
14  Phi chapters, which would have resulted in an economic benefit to OurHouse.

15      87.    Defendants were aware of OurHouse's economic relationship
16  with Pi Beta Phi UCLA, as OurHouse is informed and believes and, on the
17  basis of such information and belief, alleges that, after OurHouse initially
18  contacted defendant Cummings on or about January 30, 2014, Defendants
19  contacted Pi Beta Phi UCLA to determine how much its members enjoyed
20  using the OurHouse App.

21      88.    Defendants were aware of OurHouse's economic relationship
22  with Pi Beta Phi SDSU, as the president of Pi Beta Phi SDSU informed
23  OurHouse that Pi Beta Phi SDSU would no longer be able to use the
24  OurHouse App because a "national advisor" for Defendants had presented Pi
25  Beta Phi SDSU with the Infringing Application to use instead of the
26  OurHouse App.

27      89.    Defendants were aware of OurHouse's economic relationship
28  with others of Pi Beta Phi Fraternity's approximately 137 affiliated chapters,

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

1    as OurHouse conveyed to Defendants its goal of having the OurHouse App be
2    used by these affiliated chapters.

3        90.    Defendants intended to, and did, disrupt these economic
4    relationships by asking OurHouse to submit a formal proposal containing
5    sensitive information about the OurHouse App for the limited purpose of
6    considering OurHouse to be an approved vendor, and thereafter
7    misappropriating such information to construct the nearly-identical competing
8    Infringing Application to be used by all of Pi Beta Phi Fraternity's 137
9    affiliated chapters (including Pi Beta Phi UCLA and Pi Beta Phi SDSU)
10   instead of the OurHouse App.

11       91.    As a direct and proximate result of defendants' false
12   representations concerning submission of a formal proposal for approved
13   vendor consideration, and its subsequent misappropriation of sensitive
14   information regarding the OurHouse App, OurHouse has suffered monetary
15   damages in an amount to be proven at trial.

16

17                     **EIGHTH CAUSE OF ACTION**
18                        **Theft of Trade Secrets**
19           **(Brought By Plaintiff Against All Defendants)**
20       92.    OurHouse repeats, re-alleges, and incorporates herein by this
21   reference each and every allegation contained in paragraphs 1 through 39, as
22   though set forth in full herein.

23       93.    OurHouse has been in the business of administering a fraternity
24   and sorority chapter management application since 2013, and by virtue of its
25   time and experience in this business has developed unique, proprietary
26   processes, including but not limited to: how to implement and roll out a
27   fraternity and sorority chapter management system and mobile application to
28   new fraternity and sorority chapters; how to best engage chapter members to

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

use a fraternity and sorority chapter management system and mobile application; and how to obtain feedback from chapter members and executive council members regarding the various features of a fraternity and sorority chapter management system and mobile application (collectively, "Confidential Trade Secret Information").

94.     OurHouse developed this Confidential Trade Secret Information at great expense over a long period of time.  OurHouse derives independent economic value from such Confidential Trade Secret Information not being generally known to the public, as the availability of this Confidential Trade Secret Information would provide competitors with a significant competitive advantage and cause a significant loss to OurHouse.

95.     The Confidential Trade Secret Information is not generally known to the public or the fraternity and sorority "industry," and has been the subject of reasonable efforts by OurHouse to maintain its confidentiality, including restricting access to such Confidential Trade Secret Information to those consultants and investors of OurHouse who must use the Confidential Trade Secret Information in performing their agreements with OurHouse.

96.     Defendants gained access to OurHouse's Confidential Trade Secret Information in the course of a relationship between OurHouse and Defendants wherein Defendants asked OurHouse to submit a formal proposal and corresponding sensitive information regarding the OurHouse App to Defendants in exchange for Defendants' agreement to review such a proposal for the limited purpose of considering OurHouse as an approved vendor of the OurHouse App.  Defendants accepted Confidential Trade Secret Information both at the point that OurHouse submitted its formal proposal on February 4, 2014 and in numerous subsequent telephone calls and email correspondences.

97.     At all times alleged herein, OurHouse took reasonable precautions under the circumstances to protect its Confidential Trade Secret

Information, and all parties with access to the information were subject to obligations to maintain its secrecy.

98.  OurHouse is informed and believes and, on the basis of such information and belief, alleges that Defendants have improperly misappropriated, used, and disclosed to third parties (including a "trusted vendor" referred to in defendants' September 17, 2014 email) OurHouse's Confidential Trade Secret Information, maliciously and in willful and conscious disregard for the rights of OurHouse.

99.  As a direct and proximate result of Defendants' willful, improper, and unlawful misappropriation, use, and disclosure of OurHouse's Confidential Trade Secret Information, OurHouse has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial. OurHouse will also continue to be irreparably damaged unless Defendants are enjoined from further use and disclosure of OurHouse's Confidential Trade Secret Information.

100.  The aforementioned acts of Defendants in wrongfully misappropriating OurHouse's Confidential Trade Secret Information, were and continue to be willful and malicious, warranting an award of exemplary damages and reasonable attorneys' fees.

## NINTH CAUSE OF ACTION

### Unfair Competition in Violation of
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (Brought By Plaintiff Against All Defendants)

101.  OurHouse repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 39, as though set forth in full herein.

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

1    102.   California Business and Professions Code §§ 17200, *et seq.*

2    prohibits any unfair or unlawful business act or practice.

3    103.   Defendants' unlawful conduct, as alleged herein, including, but

4    not limited to, their fraudulent misrepresentations, their infringement of the

5    OurHouse Copyright, their infringement of the Late Plate Trademark, their

6    breaches of oral and implied agreements, their misappropriation of sensitive

7    information regarding the OurHouse App, and their interference with

8    OurHouse's contractual relations and prospective economic benefits, has been

9    and continues to be, unfair, unlawful, and harmful to OurHouse and to the

10   general public.

11   104.   Defendants' activities, as alleged herein, are violations of both

12   federal and California state law, and constitute unfair and unlawful business

13   acts and practices.

14   105.   OurHouse has suffered injury as a result of Defendants' unlawful

15   business acts and practices, as alleged herein, including, but not limited to, the

16   loss of money and/or property.

17

18   **PRAYER FOR RELIEF**

19   WHEREFORE, OurHouse prays for judgment against Defendants, and

20   each of them as follows:

21

22   **As to the First Cause of Action (Fraud):**

23   1.   An order for preliminary injunctive relief requiring Defendants to

24        immediately cease the development and/or distribution of the

25        Infringing App during the pendency of this action;

26   2.   An order for permanent injunctive relief requiring Defendants to

27        immediately cease the development and/or distribution of the

28        Infringing App following a final decision in this action;

**As to the Second Cause of Action (Copyright Infringement):**

3. An order for preliminary injunctive relief requiring Defendants to immediately cease any and all actions that would, in any manner, infringe upon OurHouse's copyright rights during the pendency of this action;

4. An order for permanent injunctive relief requiring Defendants to immediately cease any and all actions that would, in any manner, infringe upon OurHouse's copyright rights following a final decision in this action;

5. An accounting for, and payment to OurHouse of, all gains, profits, and advantages derived by Defendants as a result of Defendants' infringement of OurHouse's copyright;

**As to the Third Cause of Action (Trademark Infringement):**

6. An order for preliminary injunctive relief requiring Defendants to immediately cease any and all actions that would, in any manner, infringe upon OurHouse's rights in the Late Plate Trademark during the pendency of this action;

7. An order for permanent injunctive relief requiring Defendants to immediately cease any and all actions that would, in any manner, infringe upon OurHouse's rights in the Late Plate Trademark following a final decision in this action;

8. An accounting for, and payment to OurHouse of, all gains, profits, and advantages derived by Defendants as a result of Defendants' infringement of OurHouse's federally-registered trademark;

///

///

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

**As to the Eighth Cause of Action (Theft of Trade Secrets):**

9. An order for preliminary injunctive relief requiring Defendants to immediately cease the use, disclosure, and/or dissemination of OurHouse's Confidential Trade Secret Information during the pendency of this action;

10. An order for permanent injunctive relief requiring Defendants to immediately cease the use, disclosure, and/or dissemination of OurHouse's Confidential Trade Secret Information following a final decision in this action;

**As to the Ninth Cause of Action (Cal. Bus. & Prof. Code §§ 17200, et seq.):**

11. That the Court declare, adjudge, and decree that Defendants violated Cal. Bus. and Prof. Code §§ 17200, et seq.;

12. An order for preliminary injunctive relief requiring Defendants to immediately cease the development and/or distribution of the Infringing App during the pendency of this action;

13. An order for permanent injunctive relief requiring Defendants to immediately cease the development and/or distribution of the Infringing App following a final decision in this action;

///
///

COMPLAINT

**As To All Causes of Action:**

    14. Damages (including but not limited to general, special, restitution, and exemplary) in an amount to be proven at trial, according to proof;

    15. Reasonable attorneys' fees and costs incurred by OurHouse in pursuit of this action;

    16. Pre-judgment interest according to proof; and

    17. Such other and further relief as the Court deems just and proper.

DATED:  June 17, 2015              **PIERCE LAW GROUP LLP**

By: _____
David Albert Pierce, Esq.
Azita Mirzaian, Esq.
Vera Golosker, Esq.
Attorneys for Plaintiff
OURHOUSE MOBILE APP, INC.

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

COMPLAINT

1

## **REQUEST FOR JURY TRIAL**

2

3       Plaintiff OurHouse hereby requests a jury trial.

4

5   DATED:  June 17, 2015                **PIERCE LAW GROUP LLP**

6

7

8                                        By:_____

9                                        David Albert Pierce, Esq.
                                         Azita Mirzaian, Esq.
10                                       Vera Golosker, Esq.
                                         Attorneys for Plaintiff
11                                       OURHOUSE MOBILE APP, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PIERCE LAW GROUP LLP
9100 Wilshire Boulevard
Suite 225 East Tower
Beverly Hills, California 90212

COMPLAINT

# Exhibit "A"



John Begakis <jbegakis@gmail.com>

**Serial number 86586170: Received Your Trademark/Service Mark Application, Principal Register**
2 messages

TEAS@uspto.gov <TEAS@uspto.gov>                                                    Thu, Apr 2, 2015 at 7:03 PM
To: jbegakis@gmail.com

1. **YOUR MARK:** LATE PLATE (Standard Characters, mark.jpg)
   The literal element of the mark consists of LATE PLATE.
   The mark consists of standard characters, without claim to any particular font, style, size, or color.

2. **YOUR SERIAL NUMBER:** We have received your U.S. Trademark Application and assigned serial number '86586170' to your submission. A summary of your application data is provided at the bottom of this message and serves as your official filing receipt. Please keep a copy of this information for your records. All correspondence concerning the application should reference your assigned serial number.

   Please read all of the important information below. Not every mark is registrable with the USPTO and we do not refund the application filing fee(s) if registration does not ultimately issue.

3. **RECEIVING E-MAIL COMMUNICATIONS/FILING DOCUMENTS ON-LINE:** Because you have authorized receipt of correspondence by e-mail, please make sure that your server will accept USPTO e-mail and not treat it as SPAM. If you must submit correspondence to us, please use the Trademark Electronic Application System (TEAS) forms, available at http://www.uspto.gov/trademarks/teas/index.jsp. Applicants who filed their application online using the lower-fee TEAS RF application form must (1) continue to submit certain documents online using TEAS, including responses to Office actions (see http://www.uspto.gov/trademarks/teas if required_teas_filings.jsp for a complete list of these documents); (2) accept correspondence from the USPTO via e-mail throughout the examination process, and (3) maintain a valid e-mail address. TEAS RF applicants who do not meet these three requirements must submit an additional processing fee of $50 per international class of goods and/or services. However, in certain situations, authorizing an examiner's amendment by telephone will not incur this additional fee.

4. **KEEP YOUR ADDRESS CURRENT IN USPTO RECORDS:** We do not extend filing deadlines due to a failure to receive USPTO mailings/e-mailings. You must update the correspondence and/or owner's address if a postal address and/or e-mail address changes, using the form(s) available at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

5. **WARNING ABOUT UNSOLICITED COMMUNICATIONS:** You may receive trademark-related communications from private companies not associated with the USPTO. These communications frequently display customer-specific information, including your USPTO serial number or registration number and owner name, and request fees for trademark-related services, such as monitoring, listings in international publications, and document filing. None of the companies offering these services are affiliated with the USPTO or any other federal agency. All official correspondence will be from the "United States Patent and Trademark Office" in Alexandria, VA, and if by e-mail, specifically from the domain "@uspto.gov." Please consult the "Warning" page on the Trademarks section of the USPTO's website for further information about unsolicited communications and to view representative examples of them. For general information on filing and maintenance requirements for trademark applications and registrations, including fees required by law, please consult www.uspto.gov, contact the TrademarkAssistanceCenter@uspto.gov or telephone 1-800-786-9199.

6. **LEGAL EXAMINATION PROCESS:** Your application is now pending examination. In approximately 3 months, your application will be assigned to a USPTO examining attorney for review. The application cannot mature into a registration unless all legal requirements are met, and many applications never satisfy these requirements and therefore never register. The overall process can take up to 18 months.

7. **CHECK STATUS AND REVIEW DOCUMENTS OR YOUR APPLICATION MAY BE UNINTENTIONALLY ABANDONED:** You must check the status and review all documents associated with your application at least every 3-4 months using Trademark Status and Document Retrieval (TSDR), available at http://tsdr.uspto.gov.

   Promptly e-mail the TrademarkAssistanceCenter@uspto.gov or telephone 1-800-786-9199 (select option #1) if an Office action (letter from the USPTO) or notice has issued for your application that you did not receive or do not understand. Failure to respond timely to any Office action or notice may result in the abandonment of your application, requiring you to pay an additional fee to have your application revived even if you did not receive the Office action or notice

8. **FILING ERRORS:** If you discover an error in the application data, you must file a Voluntary Amendment at http://www.uspto.gov/trademarks/teas/miscellaneous.jsp. Do not submit any proposed amendment to TEAS@uspto.gov, because the TEAS technical support team may not make any data changes. Please wait approximately 7 days after the filing date of your application to submit a Voluntary Amendment in order to allow for initial upload of your application data into the USPTO database. The assigned examining attorney will determine the acceptability of any Voluntary Amendment during examination. Not all errors may be corrected. For example, if you submitted the wrong mark or if the proposed correction would be considered a material alteration to your original filing, it will not be accepted. In this case, your only recourse would be to file a new application, with a new fee and no refund of your original filing fee.

9. **REQUEST FOR REFUND AND/OR CANCELLATION:** Since your application has already been assigned a serial number, please do not contact TEAS@uspto.gov to request a refund or to cancel the filing. We will only cancel the filing and refund the filing fee if the application does not meet minimum filing requirements. The fee is a processing fee that the USPTO does not refund, even if your mark does not proceed to registration.

   In the limited situation where you inadvertently filed identical applications, one immediately after the other, because no confirmation of the first filing was received, please provide both serial numbers to the technical support team at TEAS@uspto.gov.

10. **SelectUSA:** The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community, serves as an ombudsman for existing and potential investors, advocates on behalf of U.S. cities, states, and regions competing for global investment, and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit SelectUSA.gov or call +1.202.482.6800.

**SUMMARY OF APPLICATION DATA FOLLOWS:**

APPLICATION DATA: You have filed a Trademark/Service Mark Application for registration on the Principal Register using a TEAS RF application form.

The applicant, OurHouse Mobile App, Inc., a corporation of California, having an address of
#102,
1828 Prosser Avenue
Los Angeles, California 90025
United States

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 042: Providing temporary use of online non-downloadable software, for use in placing and managing orders to reserve meals after kitchen service hours

In International Class 042, the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/02/2014, and first used in commerce at least as early as 10/02/2014, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) A screen shot of applicant's online mobile application displaying the mark used in providing the services.
Specimen-1 [SPE00-6710370154-201504022214008577088__Late_Plate_Service_Mark_Specimen.pdf ]

No claim is made to the exclusive right to use LATE apart from the mark as shown.

For informational purposes only, applicant's website address is: www.ourhouse.us

The applicant's current Attorney Information:
John M. Begakis, Esq. of Cohen Business Law Group, APC

Suite 1025
10990 Wilshire Boulevard
Los Angeles, California 90024
United States

The applicant's current Correspondence Information:
John M. Begakis, Esq.
Cohen Business Law Group, APC
Suite 1025
10990 Wilshire Boulevard
Los Angeles, California 90024
(310) 683-7638(phone)
(310) 469-9610(fax)
jbegakis@gmail.com;jbegakis@cohenblg.com (authorized)
E-mail Authorization: I authorize the USPTO to send e-mail correspondence concerning the application to the applicant or applicant's attorney at the e-mail address provided below. I understand that a valid e-mail address must be maintained and that the applicant or the applicant's attorney must file the relevant subsequent application-related submissions via the Trademark Electronic Application System (TEAS). Failure to do so will result in an additional processing fee of $50 per international class of goods and/or services.

A fee payment in the amount of $275 has been submitted with the application, representing payment for 1 class(es).

**Declaration**

The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant, the specimen(s) shows the mark as used on or in connection with the goods/services in the application, and/or if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section 1126(e), the applicant is entitled to use the mark in commerce, the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature /John Begakis/  Date 04/02/2015
Signatory's Name John M. Begakis, Esq.
Signatory's Position Attorney of record, California state bar member

Thank you,

The TEAS support team
Thu Apr 02 22:03:07 EDT 2015
STAMP: USPTO/BAS-67.103.70.154-20150402220307012418-86586170-530525368bdaabb6884e1be6487fcf5a4838260f3c6112be492358f44bfc1daa918-CC-7208-20150402214006577068

# Exhibit "B"



John Begakis <jbegakis@gmail.com>

## Confirmation of Receipt

**Copyright Office** <noreply@loc.gov>
To: jbegakis@gmail.com

Wed, Dec 3, 2014 at 10:30 PM

THIS IS AN AUTOMATED EMAIL - PLEASE DO NOT REPLY.

Your application and payment for the work OurHouse Mobile Application Workflow V.1.0 were received by the U.S. Copyright Office on 12/04/2014.

PLEASE NOTE: Your submission is not complete until you upload or mail the material you are registering. To do so, logon to eCO (https://eco.copyright.gov/ eService_enu/) and click on case number 1-1951443511 in the Open Cases table. Follow the instructions to either upload a digital copy or mail a physical copy (with shipping slip attached) of the work being registered. Additional instructions and requirements for submitting the material being registered can be found at http://www.copyright.gov/eco/tips/.

SHIPPING SLIPS: If you mail physical copies of the material being registered, the effective date of registration will be based on the date on which we receive the copies WITH CORRESPONDING SHIPPING SLIPS A TTACHED.

A printable copy of the application will be available within 24 hours by clicking the My Applications link in the left top most navigation menu of the Home screen.

You may check the status of this claim via eCO using this number 1-1951443511. If you have questions or need assistance, Copyright Office contact information can be found at http://www.copyright.gov/help/index.html#general.

United States Copyright Office

# Exhibit "C"



John Begakis <jbegakis@gmail.com>

---

Fwd: documents for elly

**Anders Kusion** <anderskusion@gmail.com>                                                           Thu, Jun 11, 2015 at 4:25 PM
To: John Begakis <jbegakis@gmail.com>

---------- Forwarded message ----------
From: Nate Troum <ntroum@gmail.com>
Date: Tue, Feb 4, 2014 at 7:23 PM
Subject: Fwd: documents for elly
To: Elly Cummings <elly@pibetaphi.org>
Cc: Anders Kusion <AndersKusion@gmail.com>

Hi Elly,

We hope the preparation for the leadership conference is going well and wish you the best of luck this weekend   Attached is the proposal that was approved by Jennifer Berman  the Alumnae Advisory Committee Co-Chair for the CA Delta chapter of Pi Beta Phi   It includes some information about ourselves, our company, what our app is currently capable of and our vision for the future   It also contains several screen shots of our Version 1 that the CA Delta chapter is using   We have made some adjustments to Version 1 from the feedback we received, but are focusing the majority of our time and resources to Version 2 which is in progress

Also attached is a diagram showing the wire frame of our Version 2   We designed the User Interface and functionality, but want you to know that the Pi Beta Phi skin you see on the diagram is a preliminary draft  and something that we want to work with you to design. Because this will be a representation of your national organization, we would love to have your feedback throughout the whole project so that you are guaranteed a final product that you're proud to implement nationally   A great example actually came up today, when our development team urged us to allow members to save their Login passwords   Usually this is done for user convenience  but we felt that they should have to type in their password every time to maximize security and prevent unauthorized user access.  Which would the national organization prefer?  There are pros and cons to both, but this is a great example of where your needs as an organization will dictate some of the functions that we are building.

Thank you again for your time and we look forward to speaking with you next week.  Please feel free to contact us if you have any questions before then and keep us posted on your availability   It's been a pleasure working with Pi Phi on the regional level thus far, and we are extremely excited to continue building this relationship.

Best,

Nathan Troum & Anders Kusion
OurHouse

---

2 attachments



**Tech-Specs-Chart-v2dr1.jpg**
4885K

**OurHouseProposalPiBetaPhiCAdelta_FINAL.docx**
750K



# ADVISOR PROPOSAL

## Intended for the California Delta Chapter of Pi Beta Phi

ABOUT US

OurHouse was founded by Nathan Troum and Anders Kusion, two UCLA '10 graduates and alumni of the Epsilon Pi Chapter of Sigma Nu. OurHouse's founding came to fruition out of a very apparent need to bring the Greek system into the modern era of Smartphone technology. As former active members of a house that we love, we understand that involvement with a Greek organization becomes a huge part of a student's life during the four years in college. With the vast majority of sorority and fraternity members owning Smartphones, we sought to create a comprehensive day-to-day "LifeStyle" App for them to use. It is intended to not only enhance security, communication and organization, but also make Greek life more convenient.

PRODUCT

OurHouse is an iOS/Android mobile application that is specifically tailored to sororities and fraternities. The application is password-protected and will purge extraneous data every few weeks to ensure the members an absolutely private tool for performing many of the daily tasks associated with Greek life. OurHouse offers users an event calendar, a secure wall to post messages and photos, a weekly meal menu, weekly house chores list, attendance taking forms, a photo gallery, new member packet and all pertinent national and chapter information. The application also features "Our Deals" where users can access exclusive discounts and coupons for local Westwood-based business (we've partnered with The Tanning Club, In-Style Nails, Uni K Wax and several others). Additionally, OurHouse includes a corresponding web portal (at login.ourhouse.us) where the President, VP of Communication or PR Chair can edit/update content and send out instant push notifications to the entire house.

(SCREENSHOTS)



VISION

As OurHouse becomes an integral part of Greek life, its usefulness will expand to include Alumni-related opportunities and inter-house communication. Every year, new chapter members will be accepted and begin using OurHouse, and every year, many more chapter members will graduate and enter the working world. This natural matriculation creates a new type of OurHouse user: an alumni user who can offer networking opportunities, internships and jobs for chapter members. It will also allow alumni to stay connected with one another and keep updated on house news and events. Additionally, as more Greek chapters begin using OurHouse, the application will provide direct message boards between executive councils and a way to connect Greek members via their class schedules. Mass e-mails, texts and word of mouth are inconvenient and inefficient means of communication and organization, and thus we look to bring the national Greek system into this modern era of Smartphone technology.



FORMAL PARTNERSHIP

We have sincerely enjoyed working with the California Delta Chapter of Pi Beta Phi thus far, and are so happy to receive such positive feedback over the past few months. We especially appreciate the effort and time put forth by the former Vice President of Communication Jacqueline Kuipers, and truly look forward to continued work with her as the new Chapter President. With the end of the Fall 2013 quarter and the start of a new year, we would now like to establish a more formal partnership with the Chapter by creating your registered OurHouse Account. This document approves formal OurHouse Account creation for the California Delta Chapter of Pi Beta Phi. Thank you for choosing to partner with OurHouse in our efforts to improve and protect the Greek Community, we sincerely appreciate your time and consideration. We will constantly strive to make your experience the best it can be, and look forward to continuously building this relationship into the future.



# Exhibit "D"

 <sub>Google</sub>

John Begakis <jbegakis@gmail.com>

---

**Fwd: Updated Designs**

---

Anders Kusion <anderskusion@gmail.com>
To John Begakis <jbegakis@gmail.com>

Thu, Jun 11, 2015 at 4:26 PM

---------- Forwarded message ----------
From Anders Kusion <anderskusion@gmail com>
Date Wed, Apr 23, 2014 at 11:29 AM
Subject Fwd Updated Designs
To Elly Cummings <elly@pibetaphi org>, Nate Troum <nitroum@gmail com>

Hey Elly

Our graphic designer just got us the updated screen designs of the main pages, so we wanted you to take a look at them before our call coming up.  Talk to you soon!

Best,

Anders Kusion
President & Co-Founder
OurHouse
(310) 702 - 8518

5 attachments


0_Login.jpg
86K


0_Preloader.jpg
28K


0_Splash.jpg
79K


1_MainMenu.jpg
86K


1_SwipeStart.jpg
59K



## ΩURHOUSE

Email Address

Password

## LOG IN ➦

Login Help

## Navigate

Lorem ipsum dolor sit amet, consectetur
adipiscing elit. Cras sed sodales felis. Fusce ut
ullamcorper lorem. Nullam auctor nulla velit.



**ΩURHOUSE**

Loading...



## ΩURHOUSE

## LOG IN

## REGISTER

## Welcome

Lorem ipsum dolor sit amet, consectetur
adipiscing elit. Cras sed sodales felis. Fusce ut
ullamcorper lorem. Nullam auctor nulla velit.



Case 2:15-cv-04596-PA-SS   Document 1   Filed 06/17/15   Page 46 of 51   Page ID #:46

 ●●●○○ BELL 📶          4:21 PM          ✳ 100% ▬▬

# ΩURHOUSE



Our House

Ω

Meals                    New Members



Announcements          Deals

Navigate

 ▦ EVENTS          FEED 

 ●●●○○ BELL 🛜          4:21 PM          ⚡ 100% 🔋

# Ω**URHOUSE**



## Swipe Up to Start

 EVENTS          FEED 

# Exhibit "E"



Fwd: My Pi Phi App Info

Anders Kusion <anderskusion@gmail.com>
To John Begakis <jbegakis@gmail.com>

Thu, Jun 11, 2015 at 4:25 PM

---------- Forwarded message ----------
From: Jacqueline Kuipers <uclapibetaphi@gmail.com>
Date: Wed, Sep 17, 2014 at 2:02 PM
Subject: My Pi Phi App Info
To  Anders Kusion <anderskusion@gmail.com>

**My Pi Phi: The Chapter Management Application**

*Collegiate Officers and Alumnae Advisory Committees*

Pi Beta Phi is excited to announce it is developing a Chapter Management/Communication App, "My Pi Phi," that will be launched to all chapters at Convention 2015. Headquarters staff began researching this project idea in early spring, which included a survey of chapter leaders and input from Collegiate Regional Directors. After overwhelming support of this project, HQ staff began working with a trusted vendor to develop My Pi Phi. We understand there are a few mobile device companies and other providers offering chapter apps, many of which are located in the Southeast. We encourage you to hold off on developing an app with any of these companies so you can benefit from one that is formatted specifically for Pi Phi chapters.

About My Pi Phi:

- It will allow chapters to better manage chapter operations (excluding finances) and simplify the communications process for chapter leadership to meet collegiate member expectations in a mobile world.
- My Pi Phi will be available on iOS (iPhone) and Android devices.
- Some of the functionality includes: push notifications, surveys, forms (such as, excuse, sign up, late plate request, T-shirt, etc.), communication wall for chapter members and one for Executive Council discussion, an event calendar (will link to mobile device calendar) and a check-in feature.
- It would be for collegiate use only, with oversight from AAC.
- Executive Council members will have administrative rights, the chapter members would be users. AAC and the regional teams will be able to login to view information in the app.
- My Pi Phi can take the place, and should take the place of, private chapter Facebook groups and eliminate the need to pay for mass texting services and other web-based tools.
- We do not expect the chapter to incur any costs to use My Pi Phi.
- My Pi Phi will NOT be monitored by staff, unless there is a reason to do so.
- HQ staff will provide technical support for the app, as needed.
- HQ also has the ability to send push notifications, if needed.

My Pi Phi will be ready for several pilot chapters to use this fall. Thank you to the following chapters for agreeing to pilot and provide feedback on this new app:

- Arkansas Alpha
- Colorado Epsilon
- Florida Alpha
- Florida Zeta
- Illinois Kappa
- Iowa Gamma
- Maryland Gamma
- Massachusetts Gamma
- New Mexico Alpha
- North Carolina Delta
- Oklahoma Beta
- South Carolina Alpha
- South Dakota Alpha
- Texas Beta
- Virginia Delta
- Virginia Iota
- Washington Beta

--
Jacqueline Kuipers
Chapter President
CA Delta Chapter | Pi Beta Phi

# Exhibit "F"

